A. Clifford Edwards
A. Christopher Edwards
John W. Edwards
EDWARDS, FRICKLE & CULVER
1601 Lewis Avenue, Suite 206
P.O. Box 20039
Billings, Montana 59104-0039
Telephone: (406) 256-8155

Attorneys for Plaintiffs

CLERK OF THE
DISTRICT COURT

2011 OCT 4 PM 4 35

FILED

BY _____
          DEPUTY

## MONTANA THIRTEENTH JUDICIAL DISTRICT COURT
## YELLOWSTONE COUNTY

| | |
|---|---|
| TINA CASTRO; COLLEGE PARK, LLC; JIM EDWARDS; LARRY FOX; BRAD KEMBEL; LC PROPERTIES, LLC; MCL PROPERTY HOLDINGS, LLC; CMG, INC.; JOHNSON LANE ENTERPRISES, INC.; JIM SWANSON; JERRY WILLIAMS; CATHY WILLIAMS; ERIKA WILLIAMS MADRIGAL; and BROCK WILLIAMS,<br><br>Plaintiffs,<br><br>vs.<br><br>EXXONMOBIL OIL CORPORATION; EXXONMOBIL PIPELINE COMPANY; JON R. WETMORE, individually; and JASON MONTGOMERY, individually,<br><br>Defendants. | Cause No. DV - 11 - 1419<br><br>Judge:  G. TODD BAUGH<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL<br><br>120/55880 |

COME NOW Plaintiffs, and each of them, and make claim against Defendants,

and each of them, as follows:



EXHIBIT
A

## THE PLAINTIFFS

### TINA CASTRO

1. Tina Castro owns two acres of land in Yellowstone County; that land has approximately 750 feet of Yellowstone River frontage, and the value of her property and her enjoyment of it has been greatly damaged by the wrongful acts of Defendants.

### COLLEGE PARK, LLC

2. This business entity owns 190 acres at the confluence of the Clark's Fork and Yellowstone River in Yellowstone County, and among the property's other value, it is a believed site where Captain William Clark and his contingent camped during their historic exploration of the Yellowstone River. The value of this property and the development of the property with all of its attributes has been greatly damaged by the wrongful acts of Defendants.

### JIM EDWARDS

3. Jim Edwards owns, and has owned for years, a 153 acre island in the Yellowstone River in Yellowstone County which has great value for recreational fishing and hunting, as well as other recreational activities. Its value and the enjoyment of the property has been greatly damaged by the wrongful acts of Defendants.

### LARRY FOX

4. Larry Fox has 70 acres, and several hundred feet of Yellowstone River frontage near Worden, Montana in Yellowstone County. The value and his enjoyment of it has been greatly damaged by the wrongful acts of Defendants.

### BRAD KEMBEL

5. Brad Kembel owns 100 acres, and approximately three-quarters of a mile are of Yellowstone River frontage in Yellowstone County. The value of the property and his enjoyment of it has been greatly damaged by the wrongful acts of Defendants.

### LLC PROPERTIES, LLC; MCL PROPERTY HOLDINGS, LLC; CMG, INC.; JOHNSON LANE ENTERPRISES INC.

6. These collective business properties consist of an operating gravel pit, and associated crushing and making of gravel product, together with surrounding wooded areas, which are valuable for hunting, fishing and potential real estate development. Their holdings include several hundred acres and a substantial amount of Yellowstone Riverfront in Yellowstone County. Within these LLC Properties, the flood of June and July compromised a dike and ExxonMobil's toxins and crude oil entered the gravel pit, which was under water, and put a general coating of those toxins and crude oil all across the large gravel pit. The gravel pit must be dewatered in order for the Johnson Lane pit to become operational again. The owners of this crippled gravel and sand enterprise have suffered business setback and the value of the entirety of their properties has been greatly damaged by the wrongful acts of ExxonMobil.

### JIM SWANSON

7. Jim Swanson owns four acres of land, together with Yellowstone River frontage, in Yellowstone County only a half a mile below where ExxonMobil's pipeline ruptured and polluted the Yellowstone River, as well as Mr. Swanson's properties including his home. This has greatly affected his enjoyment of his home and property.

The value of that property has been greatly diminished by the wrongful acts of the Defendants.

## JERRY WILLIAMS, CATHY WILLIAMS, ERIKA WILLIAMS MADRIGAL, AND BROCK WILLIAMS

8. The Williams Family owns some 800 acres in Yellowstone County, together with some substantial Yellowstone River frontage. They have three homes on the property, to include a rental house. The Williams' have suffered growing crop damage from the spill from the ExxonMobil pipeline. The Williams Family was developing a portion of the property for sale at the time of the spill, and all of that project and proposed sale, along with value of their property and the enjoyment, has been greatly diminished by the wrongful acts of the Defendants. This property is just downstream from the ruptured pipeline. Since the family lives on the property, they have been adversely affected in their enjoyment of the property because of the wrongful acts of the Defendants.

## COMMON FACTS

9. Plaintiffs re-allege and incorporate by reference Paragraphs 1-8 of this Complaint as if fully set forth herein.

10. Defendant ExxonMobil Oil Corporation ("ExxonMobil") is, upon information and belief, a Delaware Corporation, with headquarters, at least in the United States, in Irving, Texas. ExxonMobil operates all over the world. Defendant ExxonMobil Pipeline Company ("ExxonMobil Pipeline") is, upon information and belief, a foreign corporation with its principal place of business in Houston, Texas. It is

a wholly owned subsidiary of Defendant ExxonMobil. Collectively, both Defendants are referred to as "ExxonMobil".

11.  Defendant Jon R. Wetmore is the Manager of Defendant ExxonMobil's refinery in Billings, Montana, and a resident of and a citizen of Yellowstone County, Montana. Defendant Jason Montgomery is the Terminal Superintendent for Defendant ExxonMobil Pipeline and a resident and citizen of Yellowstone County. Defendant Montgomery participated in previous pipeline inspections and was well aware that there was an issue related to the depth of the Silvertip Pipeline at the Yellowstone River crossing and that the scouring and erosion caused by high water would impact the integrity of the pipe. These individual Defendants (Jon R. Wetmore and Jason Montgomery) are sued not only as agents of ExxonMobil, but individually, because they were actively involved and participated in the ExxonMobil decisions to ignore facts and warnings from governmental agencies that the pipe was too shallow and was exposed in a fashion that needed to be corrected. Those warnings were ignored and led to exactly what the warnings were about – the rupture of the pipe and injection into the Yellowstone River of ExxonMobil's toxins and crude oil, all of which has damaged the named and listed Plaintiffs in this Complaint. Further, these named Defendants failed, after the spill was finally detected, to properly and timely implement shut down procedures, causing more crude oil and toxins from ExxonMobil to empty into the Yellowstone River. This added more oil, soil, and spoil to Plaintiffs' properties and businesses.

12. On July 1, 2011, ExxonMobil owned and operated the Silvertip Pipeline that was, supposedly, underneath the Yellowstone River near Laurel, Montana. That pipeline had been in effect and in operation for some years. On July 1, 2011, the Yellowstone River was at near all-time record high water and in full flood mode. ExxonMobil knew, and had notice and warning, that their pipeline was dangerously exposed to the effects of the flood, in that it was nowhere near the depth beneath the bed of the Yellowstone River that it should have been to protect the last free-flowing and undammed river in North America. In June of 2009, a pipeline crossing the Yellowstone River operated by Williston Basin Interstate Pipeline Company (WBI) ruptured during high runoff conditions. On or about May 31, 2011, this same pipeline operator elected to shut in their shallow pipeline crossing of the Yellowstone near Laurel due to high river flows. At this same time, ExxonMobil was warned that their pipeline was in jeopardy should high water and riverbank erosion continue and cause flooding in Riverside Park near Laurel. But despite notice and warnings, ExxonMobil continued to flow crude, for profit, through this dangerous and defective pipeline under the Yellowstone River.

13. ExxonMobil is a corporation with unlimited resources, multiples of billions of dollars, and skilled in public relations and "spin".

14. ExxonMobil, as announced over the last weekend in September of 2011 to media outlets based out of Billings, Montana, has been permitted and given permission to start running crude oil through the replacement pipeline, which astoundingly now, as represented in the media, rests between 24 feet and 40 feet below the bed of the

Yellowstone River, in stark contrast to the five to seven feet "below" the Yellowstone River that it supposedly was when it ruptured and dumped ExxonMobil's toxic pollution into the Yellowstone River on July 1, 2011. Nonetheless, ExxonMobil had represented to the U.S. Department of Transportation Pipeline and Hazardous Materials Safety Administration (PHMSA) on June 1, 2011, that there was at least 12 feet of cover. On July 2, 2011, Defendant Jason Montgomery informed the Billings Gazette that the pipe was buried six feet below the riverbed.

15. ExxonMobil, its Terminal Superintendent and its Refinery Manager here in Montana had been warned of the substantial dangers that their shallow pipeline was creating before the July 1, 2011 incident, yet Defendants ignored all such clear dangers and warnings, and that led directly to the pollution of the Yellowstone River and the properties of Plaintiffs downstream from the rupture that was predictably going to occur, and did occur on July 1, 2011.

16. ExxonMobil, and their skilled public relations that has been directed to the media and various and sundry bureaucrats and politicians, nevertheless ignored the substantial dangers which, in fact, became reality on July 1, 2011 with their toxic spill into the Yellowstone River.

17. The named Plaintiffs, and each of them, have treasured properties with Yellowstone River frontage, and associated riparian land that all have been oiled, soiled, and spoiled by ExxonMobil, their Refinery Manager, and Pipeline Manager, named as Defendants.

18. ExxonMobil has, supposedly, "cleaned up" with a splash and a dash of perhaps 1,000 people, mostly imported from other states. Their "cleanup" has been haphazard, sloppy and not well coordinated, and directed by "adjusters" from elsewhere, other than Montana, in the United States. The result of this has been an uncoordinated and ineffective "cleanup" for Plaintiffs' properties.

19. ExxonMobil, through "adjusters", lawyers and other agents, steadfastly refused and obstructed all efforts of Plaintiffs and their representatives to determine, with written requests and demands, the quantitative and qualitative analysis of the crude oil that was in their pipeline that spilled the crude into the Yellowstone River and onto Plaintiffs' properties. Plaintiffs and their representatives made written requests for information, and such requests have been refused by ExxonMobil.

20. Similarly, despite Plaintiffs' requests for information regarding warnings that were made by city officials in Laurel, and others, that the pipeline was precarious and at risk for fouling and polluting the Yellowstone River and properties riparian to it, ExxonMobil has completely refused to provide any information in that regard.

21. ExxonMobil and its Montana executives knowingly and willfully put the Yellowstone River and its riparian landowners, like Plaintiffs named above, at the risk, which became a reality on July 1, 2011. Plaintiffs have been greatly damaged, as has life on and along the Yellowstone River.

## CAUSES OF ACTION AND DAMAGES

### FIRST CLAIMS FOR RELIEF: NUISANCE AND TRESPASS

22. Plaintiffs re-allege and incorporate by reference Paragraphs 1-21 of this Complaint as if fully set forth herein.

23. Defendants ExxonMobil, and the named Montana Defendants, created a nuisance with their toxic leak from their pipeline which they knew was going to occur and did nothing about, and then trespassed and invaded without permission or justification upon Plaintiffs' properties, with their toxins, all of which entitles Plaintiffs, and each of them, damages from such nuisances and trespass as are allowed under the circumstances by Montana law. Defendants' conduct has directly and proximately resulted in continuing and unreasonable interference with the use and enjoyment of properties owned by Plaintiffs. Plaintiffs are entitled to have all of the contamination removed and their properties restored to their pre-contaminated state.

### SECOND CLAIM FOR RELIEF: NEGLIGENCE

24. Plaintiffs re-allege and incorporate by reference Paragraphs 1-23 of this Complaint as if fully set forth herein.

25. Defendants owed a duty to Plaintiffs to exercise reasonable care in the ownership, maintenance and operation of the Silvertip Pipeline. Defendants had a heightened duty of care to Plaintiffs because of the great danger associated with transporting oil underneath a pristine river. At the very best, and charitably, ExxonMobil was negligent and breached their duties to Plaintiffs, and each of them. The result of that negligence is that their properties' values have been forever adversely

affected, and Plaintiffs, and each of them, have been damaged monetarily. Further, many Plaintiffs' business activities on their oiled, soiled, and spoiled properties have been interrupted and damaged. Negligence complained of here includes not just ignoring warnings that Defendants had, and that the pipeline was not deeply enough buried under the Yellowstone River, but also includes the failure, after the spill was finally detected, to timely and appropriately take action to limit the amount of ExxonMobil toxins and crude oil spilled into the river which affected Plaintiffs' properties, businesses, and person.

### THIRD CLAIM FOR RELIEF: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

26. Plaintiffs re-allege and incorporate by reference Paragraphs 1-25 of this Complaint as if fully set forth herein.

27. Plaintiffs, and each of them, by virtue of what Defendants, and each of them, have done to them, personally, and to their property, have caused enormous emotional distress for which Plaintiffs, and each of them, are entitled to all damages that are available under Montana law for this negligent infliction of emotional distress upon them.

### FOURTH CLAIM FOR RELIEF: STRICT LIABILITY FOR ABNORMALLY DANGEROUS ACTIVITY

28. Plaintiffs re-allege and incorporate by reference Paragraphs 1-27 of this Complaint as if fully set forth herein.

29. Defendants have engaged in an abnormally dangerous activity by transporting oil through the Silvertip Pipeline and underneath the Yellowstone River.

Defendants knew, or should have known of the high degree of risk attendant with transporting oil underneath the Yellowstone River. Defendants, and each of them, are strictly liable to the Plaintiffs, and each of them, regarding the rupture of their shallow, dangerous and predictably at risk pipeline underneath the Yellowstone River, which they continued to operate and maintain in the face of warnings and obvious breach of the standards of care that would have required their pipeline to be, as it now is, between 24 and 40 feet deep, rather than between five and seven feet, which became zero feet during the flood that was predictable in 2011. Defendants, and each of them, ignored these dangers, and then spilled toxins into the Yellowstone River and onto Plaintiffs' riparian landholdings, leaving Defendants, and each of them, strictly liable in tort to Plaintiffs for all damages to their properties, businesses, and to Plaintiffs personally.

### FIFTH CLAIM FOR RELIEF: NEGLIGENCE PER SE

30. Plaintiffs re-allege and incorporate by reference Paragraphs 1-29 of this Complaint as if fully set forth herein.

31. Defendants' conduct with regard to the ownership, maintenance and operation of the Silvertip Pipeline is governed by numerous federal and state laws, and permits issued under the authority of those laws.

32. The laws and permits create statutory standards that are intended to protect and benefit Plaintiffs.

33. Defendants' violations of these statutory standards constitute negligence *per se* under the laws of Montana.

34. Defendants' violations of these statutory standards proximately caused Plaintiffs' injuries, warranting compensatory and punitive damages.

### SIXTH CLAIM FOR RELIEF: STIGMA DAMAGES

35. Plaintiffs re-allege and incorporate by reference Paragraphs 1-34 of this Complaint as if fully set forth herein.

36. Plaintiffs, and each of them, with regard to themselves and their property and appurtenances to that property, have suffered, and continue to suffer and will permanently suffer stigma damages because the values of their property have been forever diminished in that Plaintiffs, and each of them, acknowledge and know that they have not just legal duties, but moral and plain straightforward Montana honesty obligations, to reveal to any potential purchaser of any or all of their properties that Defendants ExxonMobil, and the individual Defendants named, not only oiled, but soiled and spoiled, their properties, which will materially and adversely affect their property values, going forward, to their economic detriment.

### PUNITIVE DAMAGES

37. Plaintiffs re-allege and incorporate by reference Paragraphs 1-36 of this Complaint as if fully set forth herein.

38. The character and conduct of ExxonMobil and their agents named as Defendants is such that, under Montana law and established principles thereof, Defendants, and each of them, are liable to Plaintiffs, and each of them, for the substantial punitive damages their trial jury may award. Defendants, and each of them, through their public relations blitz to the media and to selected bureaucrats and

politicians, must be exposed at trial, vis-á-vis what Defendants, and each of them, actually knew and when they knew it regarding this time bomb of toxic pollution of which they were aware and did nothing about, other than continue to conduct their commerce for profit at known risk to the Yellowstone River and all of Plaintiffs with their riparian landownership and interest, which include not only living there, but making a living on such property and their now diminished property value because of the oil, soil, and spoil ExxonMobil visited on them.

## PRAYER FOR RELIEF

39. Plaintiffs re-allege and incorporate by reference Paragraphs 1-38 of this Complaint as if fully set forth herein.

40. Wherefore, Plaintiffs, and each of them, demand judgment against Defendants, and each of them, of such amounts of money such as Montana law permits and allows, all of which to be proven at trial, both compensatory, restoration, and punitive damages.

41. Plus, all such other relief as might be appropriate under Montana law and the circumstances of this case, to include attorney fees and costs.

42. Further, Plaintiffs, and each of them, reserve the right to add such further claims and other Plaintiffs as might, in due course, need to be added to this case in Yellowstone County court. Also reserved is the right to amend such other and further damages as may become apparent or develop as this litigation proceeds.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all of the issues in this action.

DATED this 4th day of October, 2011.

EDWARDS, FRICKLE & CULVER

By: _____
A. Clifford Edwards
A. Christopher Edwards
John W. Edwards
Attorneys for Plaintiff